# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SONYA R. EDWARDS | § § § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-2620-S |
| | § § | |
| MESQUITE INDEPENDENT SCHOOL DISTRICT | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Mesquite Independent School District's ("Defendant") Motion to Dismiss [ECF No. 8]. For the reasons stated below, the Motion is granted.

### I.     BACKGROUND

Defendant hired Plaintiff Sonya Edwards ("Plaintiff") as a substitute teacher in August or September of 2006. Am. Compl. ¶ 9. From approximately January 2014 through May 19, 2017, Plaintiff worked exclusively at Defendant's Mesquite High School ("MHS") campus. *Id.* ¶ 11.

On or about February 28, 2017, Plaintiff complained to the Equal Employment Opportunity Commission ("EEOC") and Terri Craig, an employee of Defendant, about Cherri Lynn, MHS's school secretary. *Id.* ¶ 12. Plaintiff alleged that Lynn was inquiring as to Plaintiff's whereabouts when she was on duty. *Id.* When Plaintiff told Lynn that she was in a lounge at the school, Lynn purportedly replied, "No you were not. You people lie." *Id.* Plaintiff claims that "you people" was a reference to people who are black and/or African American. *Id.* After Plaintiff complained about this incident, Lynn allegedly began harassing Plaintiff almost daily

> by asking Plaintiff where she was at all throughout the day (although she did not treat Caucasian employees the same); by forcing Plaintiff to clock-in as soon as she arrived at [MHS] (even though Caucasian employees were not required to do the same and the policies and procedures stated an employee can clock-in and clock-out at the end of the

> day before leaving work); by sending Plaintiff to the wrong classroom assignments in empty rooms without air conditioning and making her stay there until someone came to get her and tell her the correct classroom; by ignoring Plaintiff and excluding her from her peers; by scrutinizing Plaintiff's every move; and by falsely telling Defendant's Principal of [MHS] that the black/African American employees always "hang out" instead of working (even though Caucasian employees have been caught not working while on the clock and did not receive discipline), among other things.

*Id.*

On or about March 1, 2017, Lynn allegedly told other employees of Defendant and MHS that Plaintiff "(1) does not stay where she is supposed to stay while at work; (2) clocks in and leaves the campus; (3) is untrustworthy; and (4) is undependable." *Id.* ¶ 13. On or about March 3, 2017, Plaintiff met with Defendant's administrator Kelly Long regarding these accusations. *Id.* ¶ 14. Long "told Plaintiff not to worry about the accusations and that Plaintiff is loved by the students and staff and to keep doing what she is doing and from this point forward there will be a fresh start." *Id.* When Plaintiff requested that Long conduct an investigation, Long "told Plaintiff there was no need to investigate and that everything was okay." *Id.*

After this series of events, Plaintiff claims Lynn began harassing her more often. *Id.* ¶ 15. On or about May 19, 2017, Defendant informed Plaintiff that she was "blocked" from substitute teaching at MHS "based on a Substitute Evaluation Form that was false and inaccurate." *Id.* ¶ 16. Defendant moved Plaintiff to its Agnew Middle School ("Agnew") campus. *Id.* ¶ 18. Plaintiff claims that Agnew is much farther from Plaintiff's home, that "it is a new environment and Plaintiff had to start all over," and that Plaintiff's workload is more difficult at Agnew. *Id.*

After being moved, Plaintiff repeatedly requested to be allowed to work at MHS again. *Id.* ¶ 19. In August of 2017, the Assistant Principal of MHS told her that she was not allowed to return to MHS. *Id.* Plaintiff attempted to return to MHS again on August 24, 2018. *Id.* ¶ 20. On September 19, 2018, the Principal of MHS told Plaintiff that he had investigated her claims and decided to "leave the block in place." *Id.*

Based on the foregoing allegations, Plaintiff brought suit against Defendant, alleging that Defendant discriminated against Plaintiff because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant moved to dismiss under Rule 12(b)(6) for failure to state a claim.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,

3

313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

#### A. *Exhaustion of Administrative Remedies*

According to Defendant, Plaintiff failed to exhaust administrative remedies with regard to all of her claims. First, Defendant contends that Plaintiff did not timely file her EEOC charge with respect to the alleged harassment and discrimination that occurred between between late February and mid-March of 2017 and the May 19, 2017, notice that Plaintiff was prohibited from substitute teaching at MHS. Second, Defendant contends that Plaintiff's allegations regarding the August 2017 and September 19, 2018, notices that Plaintiff was still prohibited from substitute teaching at MHS were not included in Plaintiff's EEOC charge.

#### i. *Timeliness*

In Texas, a Title VII plaintiff must file her EEOC charge within 300 days of the date on which the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *Lahr v. Fulbright & Jaworski, L.L.P.*, No. 3:94-CV-0981-D, 1996 WL 673438, at *1 (N.D. Tex. Aug. 15, 1996). This requirement "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Equitable tolling is appropriate when, inter alia, the EEOC misleads a plaintiff as to her rights or makes a procedural error. *McKee v. McDonnell Douglas Tech. Servs. Co.*, 700 F.2d 260, 263-65 (5th Cir. 1983). "The burden is on the plaintiff to show a factual basis to toll the limitations period." *Phillips v. Leggett & Platt, Inc.*,

658 F.3d 452, 457 (5th Cir. 2011) (citing *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988)).

Defendant argues that Plaintiff failed to file her EEOC charge within 300 days of either the discrimination and/or retaliation that allegedly occurred in February and March of 2017 or the May 19, 2017, notice that she was prohibited from substitute teaching at MHS. Plaintiff had until March 15, 2018 (300 days after May 19, 2017) to file her charge. Plaintiff alleges in her Amended Complaint that she filed "a charge of employment discrimination and/or Intake Questionnaire against Defendant" on or about May 22, 2017. Am. Compl. ¶ 5. However, her EEOC charge is dated May 29, 2018. Def.'s App. 1. Plaintiff appears to be arguing that her May 22, 2017, EEOC Intake Questionnaire, attached to her Response as Exhibit 1, constitutes a charge for purposes of the 300-day filing requirement.

"The submission of an intake questionnaire . . . may constitute a filing for the purposes of Title VII." *Kirkland v. Big Lots Store, Inc.*, 547 F. App'x 570, 572 n.3 (5th Cir. 2013). Even if an intake questionnaire is insufficient to constitute an EEOC charge, it could provide a basis for the application of equitable tolling. *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 482 n.1 (5th Cir. 2007). However, Plaintiff did not provide any information or guidance to support the contention that she "timely completed her Charge of Discrimination and EEOC Intake Questionnaire and mailed to [sic] the EEOC Dallas office on May 22, 2017." Resp. 5. Plaintiff also did not provide any argument or legal authority supporting the notion that the Court should consider the date of her Intake Questionnaire, rather than her EEOC charge, for purpose of the 300-day requirement. Therefore, the Court grants Defendant's Motion to Dismiss with respect to Plaintiff's claims based on discrimination and/or retaliation occurring in February, March, and May of 2017.

5

## ii. *Inclusion in EEOC Charge*

A Title VII Plaintiff's EEOC charge must identify the employment practices she is challenging. 42 U.S.C. §§ 2000e-5(e)(1), (f)(1). Upon judicial review, courts in the Fifth Circuit determine what is to be reviewed "somewhat broadly" and review both what is contained in the four corners of the charge and "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Thus, courts "look slightly beyond [the charge's] four corners, to its substance rather than its label." *Id.* (citation omitted). This approach balances the policy of protecting "unlettered lay persons making complaints without legal training or the assistance of counsel" on the one hand and the policy of "encouraging voluntary compliance through EEOC conciliation" on the other. *Mathes v. Harris Cty.*, 31 F. App'x 835, at *3 (5th Cir. 2002) (quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. 1981)).

Defendant argues that Plaintiff failed to exhaust her claims based on the August 2017 and September 19, 2018, notices that she was still prohibited from substitute teaching at MHS because Plaintiff did not include either of these allegations in her EEOC charge. In fact, her charge affirmatively states that the latest date on which any discrimination took place was May 19, 2017.[1] Def.'s App. 1. Plaintiff does not respond to this argument, and none of the allegations in the Amended Complaint suggest that Plaintiff included post-May 2017 discrimination or retaliation in

---

[1] Although Plaintiff's EEOC charge is outside the pleadings, the court can consider it in ruling on the instant Rule 12(b)(6) motion because it is "referred to in the plaintiff's complaint and [is] central to the plaintiff's claim." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

6

her EEOC charge.[2] Thus, even viewing the Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff did not administratively exhaust her claims relating to the August 2017 and September 19, 2018, notices.

### B. *Failure to State a Claim*

Even if Plaintiff exhausted her administrative remedies, the Court finds that she has failed to state a claim for Title VII discrimination or retaliation.

#### i. *Discrimination*

To state a claim for discrimination under Title VII, Plaintiff must show that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by [her] employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside her protected group." *Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). Defendant contests only the third element, arguing that Plaintiff did not suffer an adverse employment action.

Adverse employment actions are "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* at 699 (quoting *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)) (internal quotation marks omitted). Plaintiff alleges that she "suffered an adverse employment action in the form of being blocked from substitute teaching for [MHS] for no legitimate reason, among other things." Am. Compl. ¶ 5. Plaintiff claims that she was "terminated from her position as a long-time substitute teacher at [MHS]," but Plaintiff was not terminated from substitute teaching for Defendant. Resp. 6. Rather, she was merely

---

[2] The Intake Questionnaire also does not allege discrimination or retaliation after May 2017.

7

transferred from one of Defendant's campuses, MHS, to another one of Defendant's campuses, Agnew.

In her Response, Plaintiff contends that "[a] prohibition from working at one of an employer's many locations can constitute an adverse employment action sufficient to state a claim for relief under Title VII." Resp. 6. However, the legal authority she cites in support of this proposition directly contradicts her argument.[3] *See Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009) (finding that reassignment that did not affect salary, benefits, or duties did not constitute tangible employment action); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (holding that claim that reassignment was "a less prestigious or desirable transfer," without more, did not establish adverse employment action); *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 320 (5th Cir. 2014) ("'[P]urely lateral' transfers do not represent adverse employment actions." (citation omitted)).

Plaintiff's factual allegations also do not support her argument that a prohibition from working at MHS constitutes an adverse employment action. Plaintiff argues that her transfer to Agnew was an adverse employment action because she "gained valuable friendships with her [MHS] coworkers and students," she "was able to walk to work at [MHS]," she "was able to work in a safe environment and did not have to work in fear of fights amongst students," and "[h]er job is now much harder and physically and mentally draining." Resp. 7. As to the first two allegations, Plaintiff has not provided any authority supporting the notion that losing friendships and losing the ability to walk to work impact her job benefits or duties such that her transfer could be considered an adverse employment action.

---

[3] The Court also notes that Plaintiff's citations, like much of her Response, appear to be directly copied from Defendant's Motion to Dismiss.

The latter two allegations are only partially supported by Plaintiff's allegations in the Amended Complaint. Plaintiff contends that her "workload is more difficult at Agnew" and that "Plaintiff now witnesses and has to break up more classroom fights." Am. Compl. ¶ 18. These allegations do not support Plaintiff's allegation that "Plaintiff's job duties have drastically changed." Resp. 7. Further, "an increased workload does not qualify as an ultimate employment decision and cannot be an adverse employment action." *Chapa v. Floresville Indep. Sch. Dist.*, Civ. A. No. SA-10-CA-0945-XR, 2012 WL 3062781, at *13 (W.D. Tex. July 26, 2012) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998)). Without more, Plaintiff's transfer from MHS to Agnew does not constitute an adverse employment action. Because Plaintiff did not plead an adverse employment action, the Court grants Defendant's motion to dismiss Plaintiff's Title VII discrimination claim.

### ii. *Retaliation*

To state a claim for retaliation under Title VII, Plaintiff must show that: (1) she engaged in conduct protected by Title VII; (2) she suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Cabral v. Brennan*, 853 F.3d 763, 766-67 (5th Cir. 2017). Defendant attacks the second element of Plaintiff's claim, arguing that she did not suffer a materially adverse action. A materially adverse action is one which would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

It is unclear which action or actions Plaintiff claims constitute materially adverse actions. In her Response, Plaintiff copies Defendant's legal citations and repeats Defendant's briefing. She includes all of the actions identified by Defendant, including that Lynn was rude to Plaintiff, that

9

Plaintiff received an inaccurate evaluation form, and that Plaintiff was transferred to another campus. Resp. 8. "Thus," she concludes, "Plaintiff alleges that she has been terminated from working at [MHS]." *Id.* Plaintiff goes on to argue that she pleaded "facts sufficient to prove a materially adverse action as the result of her benefits and job duties and because there is also evidence that she suffered a diminution in prestige or change in standing among her coworkers." *Id.* at 8-9. Based on Plaintiff's Amended Complaint and Response, the Court assumes that the transfer (or termination from working at MHS) is the only alleged materially adverse action.

As to the allegation that Plaintiff suffered a materially adverse action "as the result of her benefits and job duties," the Court finds that Plaintiff has not successfully pleaded that her transfer would dissuade a reasonable worker from making or supporting a charge of discrimination. Plaintiff has not alleged that the reassignment affected her "job title, grade, hours, salary or benefits." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009). Although Plaintiff makes the conclusory allegation that she suffered a diminution in prestige or change in standing, the Amended Complaint does not contain a single factual allegation to support this argument. And, as discussed above, Plaintiff has not provided sufficient evidence that her duties have changed as a result of the transfer. In sum, Plaintiff's Amended Complaint is devoid of allegations showing that Plaintiff's lateral reassignment constituted a materially adverse action. The Court grants Defendant's motion to dismiss Plaintiff's Title VII retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss without prejudice. Plaintiff has not sought leave to amend. If Plaintiff wishes to replead, she must seek leave to file an amended complaint by June 11, 2019. If a motion for leave to file, with the

proposed amended complaint attached, is not filed by this date, Plaintiff's claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED May 20, 2019.

**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**